UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SONYA ROSE GRIER WELLS,

    Plaintiff,

v.                                                                                          CASE NO. 3:15-cv-1179-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## **MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits ("DIB"). Plaintiff alleges she became disabled on March 1, 2009. (Tr. 199.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on October 2, 2014, at which Plaintiff was represented by an attorney. (Tr. 34-80.) The ALJ found Plaintiff not disabled from March 1, 2009 through November 3, 2014, the date of the decision.[2] (Tr. 14-26.)

In reaching the decision, the ALJ found that Plaintiff had "the following severe impairments: chronic anemia, diabetes mellitus, degenerative disc disease, obesity, arthroplasty, an affective disorder, neuropathy and gastritis."

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 11, 14.)

[2] Plaintiff had to establish disability on or before December 31, 2014, her date last insured, in order to be entitled to a period of disability and DIB. (Tr. 14.)

(Tr. 16.)  The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of sedentary work.  (Tr. 19.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from March 1, 2009 through November 3, 2014.  Plaintiff has exhausted her available administrative remedies and the case is properly before the Court.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the Commissioner's decision is **REVERSED and REMANDED**.

**I.     Standard**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th

Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

Plaintiff argues that the ALJ erred in assigning minimal weight to the opinions of Drs. Goldman and Reno, who treated Plaintiff, and the opinions of Dr. McCloskey, who performed a consultative examination of Plaintiff. Plaintiff asserts that the opinions of these doctors establish far greater limitations than assessed by the ALJ in the RFC, particularly with respect to lifting, standing, walking, sitting, and the requirement to alternate between these positions. Plaintiff also asserts that the opinions of these doctors are consistent with the underlying record and with each other, and these doctors provided the only opinions from treating/examining sources regarding Plaintiff's work-related limitations. Plaintiff further argues that the ALJ's credibility finding is deficient as a matter of law because he did not consider Plaintiff's 25-year exemplary work history before finding her not credible. Defendant responds that the ALJ properly discounted the opinions of Drs. Goldman, Reno, and McCloskey, and properly concluded that Plaintiff's allegations concerning her subjective symptoms were inconsistent with the evidence of record.

### A.     The Opinions of Drs. Goldman, Reno, and McCloskey

On August 14, 2010, Dr. James McCloskey conducted a consultative examination of Plaintiff.  (Tr. 723-27.)  Under Functional Limitations, Dr. McCloskey noted:

> The claimant reports functional limitations of sitting 10-15 minutes, standing 10 minutes, walking a few feet and lifting and carrying 2 pounds frequently and 4 pounds occasionally with limitations due to back and right leg pain and feet weakness.  The claimant reports other limitations such as fastening her bra and traveling long distances.

(Tr. 724.)

On examination, Plaintiff "had an unsteady, asymmetric gait favoring the right lower extremity," her "lower extremity strength was difficult to assess secondary to pain," there was "[d]ecreased sensation over the plantar surface of the feet bilaterally," and "[t]he straight leg test was positive at 15 degrees on the right and 25 degrees on the left."  (Tr. 726.)  Further, the musculoskeletal examination demonstrated, in relevant part, that:

> The claimant was able to lift, carry and handle light objects.  The claimant was unable to squat and rise from that position.  The claimant was able to rise from a sitting position without assistance with difficulty getting up and down from the exam table.  The claimant was able to walk on heels and unable to walk on toes.  Tandem walking was not achieved, and the claimant could not stand or hop on either foot bilaterally.  The claimant could not dress and undress adequately well; she required assistance from her daughter in dressing in the morning and was not able to secure her bra.

(Tr. 726-27.)  Dr. McCloskey continued: "Range of motion in the hip and lower

extremity was difficult to assess secondary to pain and the limited range of motion observed above was most likely secondary to pain and not true limited range of motion of the joint itself." (Tr. 727.)

The doctor's impression was as follows:

> The claimant provided us with her best effort during the examination. The claimant can be expected to sit for two hours, stand for 30 minutes and walk for 15 minutes at a time in an eight-hour workday before requiring a break. These limitations are due to lower back pain and radiculopathy. The claimant does not need an assistive device with regards to short and long distances and uneven terrain. The claimant can be expected to carry 5 pounds frequently and 10 pounds occasionally. There are limitations on bending, stooping, crouching, and so on and the claimant will be able to perform these occasionally. These limitations are due to lower back pain, radiculopathy and limited range of motion. There are no manipulative limitations on reaching, handling, feeling, grasping, fingering, and the claimant will be able to perform these frequently.

(*Id.*)

Dr. Andrew Reno, a chiropractic doctor, has treated Plaintiff since April 9, 2010 for severe low back pain, right leg pain, and bilateral foot pain. (*See* Tr. 729.) She was diagnosed with disc displacement, sciatica, lumbar disc degeneration, and spasm of muscle. (*Id.*) In a September 1, 2010 letter to Dr. Powell, Dr. Reno summarized Plaintiff's treatment as follows:

> [Plaintiff] was initially treated with manipulation, progressive rehabilitation and modalities[,] including ultrasound combined with muscle stimulation. After her first three visits[,] both back and leg pain [were] reduced by 50%. Mrs. Wells then lost her brother and missed two appointments to attend his funeral. At the funeral, Mrs. Wells' husband Gregory died during the eulogy.

> Upon her return to the office[,] pain did elevate to its previous level and did not respond to the previous[ly] mentioned treatments. Non-surgical spinal decompression was then utilized and improvements were again seen in [the] low back and right leg pain. However[,] no change was seen in foot pain.
>
> Due to the complication of her case[,] I referred her to Dr. Powell's MD office in order to have one physician in control of her [medications] as well as perform any new testing deemed necessary. I feel an EMG could give a clearer view of the foot pain because it does present as neurological problem associated with diabetes.
>
> Mrs. Wells reports she is sleeping the best she has in months due to the decrease in pain. She[,] at this time[,] considers three to four hours a good night sleep compared to what she has been used to. I would[,] however[,] like to see at least an increase of an additional two hours per night.

(Tr. 729-30.) In conclusion, Dr. Reno stated: "Mrs. Wells has applied to Department of Rehabilitative Services for benefits and I have forwarded all notes. At this time[,] I strongly recommend her to not return to work. With her current pain level and presentation[,] I don't feel she could even drive safely to get there." (Tr. 730.)

On September 22, 2014, nurse practitioner Joan Rellmore and Dr. David Goldman co-signed a "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)." (Tr. 1776-77.) They opined that Plaintiff could lift and carry less than ten pounds occasionally and frequently due to back pain and neuropathy, could stand and walk for less than two hours in an eight-hour workday, and could sit for less than two hours in an eight-hour workday. (Tr. 1776.) Further, Plaintiff could sit for 45 minutes and stand for 15 minutes before changing position, she would

6

need to walk around every 15 minutes for 5 minutes, she would need the opportunity to shift positions at will, and would sometimes need to lie down at unpredictable intervals every four hours.  (*Id.*)  These limitations were due to radiculopathy from back pain, lesion in the left T7 vertebrae, and weakness in the legs.  (*Id.*)

Dr. Goldman and nurse practitioner Rellmore also opined that Plaintiff could occasionally twist, stoop (bend), crouch, and climb stairs, but never ladders, due to neuropathy and back pain.  (Tr. 1777.)  They further opined that Plaintiff's reaching, fingering (fine manipulation), handling (gross manipulation), and feeling were affected by her impairment.  (*Id.*)  They added that Plaintiff's symptoms were severe enough to constantly interfere with attention and concentration, that she would be absent from work more than four days per month due to her impairments or treatment, and that her symptoms and limitations began in 2007.  (*Id.*)

### B.  Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3).  With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise.

*See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam). *See also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam)


(same).

Evidence from other sources, *e.g.*, not acceptable medical sources such as nurse-practitioners, may be used to show the severity of a claimant's impairments and how it affects the claimant's ability to work. 20 C.F.R. § 404.1513(d); SSR 06-03p. "Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." SSR 06-03p.

> The weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors . . . . However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source.

*Id.*; *see also Duncan v. Astrue*, Case No. 3:07-cv-751-J-HTS, 2008 WL 1925091, *2 (M.D. Fla. Apr. 29, 2008) (citing SSR 06-03p); *Sloan v. Astrue*, 499 F.3d 883, 888-89 (8th Cir. 2007) (same).

### C. The ALJ's Decision

The ALJ found that Plaintiff had the RFC to perform sedentary work,[3]

---

[3] "The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers,
(continued...)

except:

> [T]he claimant can lift 10 lbs. occasionally and up to 10 lbs. frequently.  Further, the claimant can occasionally climb ramps and stairs.  In addition, she can occasionally balance, stoop, kneel and crawl.  Moreover, the claimant can never climb ladders, ropes or scaffolds.  In addition, she can never crouch.  Further, the claimant must avoid all exposure to hazards, including dangerous machinery, temperature extremes, humidity and wetness.  Finally, the claimant is limited to unskilled (SVP 2) work.

(Tr. 19.)

In making this finding, the ALJ discussed Plaintiff's subjective complaints and the medical evidence, including the opinions of Drs. Goldman, Reno, and McCloskey.  (Tr. 20-24.)  With respect to the opinions of Dr. Goldman and nurse practitioner Rellmore, the ALJ stated:

> The undersigned has evaluated the opinion of Joan Rellmore, a nurse practitioner (Exhibit 26F).  The undersigned notes, pursuant to the Code, that a nurse practitioner is not an acceptable medical source . . . .  In addition, only acceptable medical sources can give medical opinions . . . .  However, in this case, as requested in the form itself, the form has apparently been co-signed by a medical doctor.  This fact makes the opinion as if the doctor himself authored it, and it is therefore deemed to be from an acceptable medical source.  However, just because an opinion is from an acceptable

---

³(...continued)
and small tools.  Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  By its very nature, work performed primarily in a seated position entails no significant stooping.  Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions. 'Occasionally' means occurring from very little up to one-third of the time.  Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."  SSR 83-10.

10

> medical source does not make it persuasive. In this case, it is not clear if this doctor ever treated or examined the claimant. Moreover, even if he did treat her at some point, there does not appear to be a long term treating relationship. Further, the opinion is not consistent with the record as a whole, or even the treatment notes form [sic] the doctor's own clinic. Therefore, the undersigned gives this opinion little weight.

(Tr. 23.)

The ALJ next discussed Dr. Reno's opinions as follows:

> The undersigned has also evaluated the opinion of chiropractor Andrew Reno (Exhibit 8F). On September 1, 2010, the chiropractor wrote a letter indicating that the claimant could not return to work. However, other than postulating that the claimant could not drive, the chiropractor gave no specific limitations that the claimant's diagnoses caused. In addition, the chiropractor's findings are not consistent with the evidence as a whole. As noted above, the ultimate determination of disability is reserved to the Commissioner pursuant to SSR 96-5p. In addition, this opinion is overly vague and offers little probative value as to the claimant's actual abilities. Therefore, the undersigned gives this opinion little weight.

(Tr. 23-24.)

With respect to Dr. McCloskey's opinions, the ALJ stated:

> On August 14, 2010, the doctor examined the claimant but failed to make even a single diagnosis. Despite making no diagnoses[,] the doctor opined that the claimant had limitations with bending, stooping, crouching "and so on" (Exhibit 7F, page 5). The doctor neglected to define what was included in "and so on." That term is so vague that it could include anything from sight to hearing to crawling. Overly vague opinions, such as this one, offer no actual insight into the claimant's ability to perform work activities and are of little to no use in the evaluation process. Therefore, the undersigned gives this vague opinion little to no weight.

(Tr. 23.)

**D.     Analysis**

The Court agrees with Plaintiff that the ALJ erred in his evaluation of the opinion evidence. Although an ALJ may discount any medical opinion if the evidence supports a contrary finding, in the present case, the ALJ's reasons for discounting the opinions of Drs. Goldman, Reno, and McCloskey are not supported by substantial evidence.

First, in rejecting Dr. Goldman's opinion, the ALJ took the position that the opinion was inconsistent with the treatment notes from the doctor's own clinic, while at the same time, rejecting the opinion because it did not seem clear that Dr. Goldman ever treated or examined Plaintiff. (Tr. 23.) This inconsistency in the ALJ's stated reasons for discounting Dr. Goldman's opinion leaves the Court speculating as to whether the ALJ examined the voluminous record in this case. To the extent the ALJ concluded that Dr. Goldman's opinion was inconsistent with the record as a whole, the ALJ did not provide any indication as to what parts of the record he had in mind. The ALJ similarly discounted Dr. Reno's opinion for being inconsistent with the evidence as a whole, without pointing to any particular evidence in that respect.

Without specific references to the record, which spans over 1900 pages and certainly includes evidence supporting Plaintiff's claim for disability, the Court cannot conclude that the ALJ's decision to discount the doctors' opinions based on somewhat conclusory and internally inconsistent reasons, was supported by

substantial evidence. Without attempting to provide a complete picture of Plaintiff's condition and medical records, the Court observes that the record includes detailed reports from multiple emergency room visits, treatment records,[4]

---

[4] *See, e.g.*, Tr. 505 ("Again[,] most significantly she is an uncontrolled diabetic preventing her from being referred for [an epidural steroid injection]. . . . Brian D'Orazio . . . was recommending [another] back surgery."), 506 ("[S]he has also ha[d] significant medical problems here recently with markedly labile blood sugars and sometimes her serum glucose is 500-600. She has had recent anemia which required a transfusion and recent SVT [i.e., supraventricular tachycardia] that required cardioversion. . . . Exam shows significant amount of pain behavior. She is able to stand independently and walk normally, but is very slow and cautious in her gait. Her lumbar spine flexion maximum is only 20 degrees and extension is -5 degrees. She had tenderness in the left sciatic notch, LS midline and SI joint region. Her [straight leg raising] signs are positive on the left in a sitting position about 60 degrees . . . . She does have some neuropathy and sensory changes in both feet and distal ankles. . . . I think given the small size of her disk fragment this most likely will resorb with time."), 507 (noting "severe low back and left leg pain"), 508 ("She is in obvious distress . . . . It takes maximum effort and my assistance to assist her to arise her [sic] from a sitting position to attempt to transfer to the exam table, but she is unable to arise on the step stool to be placed on the exam table. . . . The left lower extremity has significant weakness to resistance anterior tibialis and EHL. This is 4/5. Possibly there is a degree of pain inhibition involved. She had a positive contralateral [straight leg raise], positive left [straight leg raise] at 35 degrees and positive sciatic tension sign. . . . Since the patient's diabetes is uncontrolled[,] I did not place her on a Medrol Dosepak."), 736 & 742 (noting pedal edema, chronic back pain, burning and hypersensitivity in feet), 766 (noting "[right] and [left] foot still in pain, cannot walk/stand or sleep"), 770 (noting "continuing back pain"), 781 ("Severe back pain [on September 1, 2011]. Back surgery [in] 2007."), 992 (diagnosing diabetes type II, neuropathy, and nerve damage, and observing weak grasp), 993 (noting severe neuropathy, severe back and bilateral foot pain), 1196 (noting back and joint pain on examination), 1374 (noting "severe back pain"), 1593 (noting Plaintiff was administered an epidural steroid injection in the lumbar area), 1595-99 (noting sharp pain in the lower lumbar spine radiating to the right thigh, worsened by walking; stating the "pain is so bad that she can't sleep"; observing soft tissue tenderness and muscle spasm in the back, but otherwise painless range of motion; Plaintiff was prescribed medications and advised to follow-up with Dr. Kirchmier with Orthopedic Surgery), 1703-04 (assessed back pain rated 10/10 with radiation, neuropathy, diabetes), 1750-52 (noting complaints of chronic low back and bilateral leg/feet pain since 2007 after back surgery; pain is described sharp, 10/10, shooting along with pins and needles; swelling of feet; Plaintiff cannot get comfortable and has

(continued...)

13

lab results and other diagnostic studies,[5] as well as medical opinions as to Plaintiff's work-related limitations. The record demonstrates that Plaintiff has been treated for chronic back pain, sciatica, foot pain, chronic chest pain and discomfort, chronic anemia, uncontrolled diabetes, and hypertension, among others. As part of her treatment, Plaintiff underwent epidural steroid injections and a lumbar laminectomy and diskectomy,[6] was hospitalized several times,[7]

---

[4](...continued) most trouble at night; on examination, hypersensitivity to touch on feet and legs was noted; her diagnoses included chronic low back pain/DDD - history of laminectomy of L4-5, chronic pain syndrome, and LE polyneuropathy); 1894-99 (an emergency room visit for an injury to the left hand and wrist on September 27, 2014 when Plaintiff's knee gave out and she fell at home; the pain was rated 8/10; on examination, there was "moderate tenderness and swelling and mild deformity" of the left wrist; sling applied to the sprained left wrist).

[5] *See e.g.*, Tr. 675 (March 3, 2009 chest X-ray), 646-47 (March 4, 2009 cardiac study), 507 (March 12, 2009 lumbar MRI, which "[m]ost significantly shows at the L4-L5 level recurrent left paracentral disc extrusion which impinges the left L4 and L5 nerve roots. It is surrounded by enhancing scar."), 632-33 (same), 631 (March 20, 2009 pelvic ultrasound), 673 (April 9, 2009 chest study), 671 (December 30, 2009 chest X-ray), 642-43 (December 31, 2009 left heart catheterization), 908-10 (March 15, 2010 esophagogastroduodenoscopy and colonoscopy), 783 (January 28, 2011 lumbar MRI showing: "Degenerative disc disease and facet DJD of the lumbar spine. A left paracentral disc herniation at L4-L5 has decreased in size compared to 3/12/2009."), 956 (October 17, 2011 pelvic MRI), 960 (January 23, 2012 pelvic ultrasound), 838 (May 10, 2012 chest CT scan), 881 (October 31, 2012 pelvic ultrasound), 1334 (August 21, 2013 lumbar MRI showing chronic degenerative changes of the lumbar intervertebral discs with chronic narrowing of the left lateral recess at L4/L5).

[6] Plaintiff's recommended hysterectomy was cancelled due to her uncontrolled diabetes. (*See* 585, 816.)

[7] *See, e.g.*, Tr. 602-05 (admitted on March 3, 2009 for chest pain and palpitations, "where she was found to have an SVT [i.e., supraventricular tachycardia] with heart rate of 164"), 590 (admitted on December 30, 2009 for chest pain, which Plaintiff rated as 10/10), 812-13 (admitted on May 9, 2012 for chest pain, lower

(continued...)

referred to different medical providers, and/or advised to limit her activities or stop working for several days at a time. (*See, e.g.*, Tr. 344-45 (patient advised to stay out of work until December 11, 2007), 456 (stating "no work until 3/18/2007"), 916 (no work for three days as of April 5, 2010), 1611 ("No driving or operating machinery. Limit lifting. Rest. Do not work today, tomorrow."), 1741 ("Do not work for two days.").)

The ALJ also concluded that the opinions of Dr. Reno and Dr. McCloskey were "overly vague." As to Dr. Reno's opinions, the ALJ stated "other than postulating that the claimant could not drive, the chiropractor gave no specific limitations that the claimant's diagnoses caused." (Tr. 23-24.) However, the purpose of Dr. Reno's letter was not to give any particular opinion as to Plaintiff's work-related limitations, but to apprise Dr. Powell of Plaintiff's treatment to date. Clearly, Dr. Reno considered Plaintiff's case to be complicated and that is why he referred Plaintiff to Dr. Powell's office. (*See* Tr. 729-30.) Dr. Reno stated that he

---

[7](...continued)
extremity pain, shortness of breath, and palpitations; "found to be severely anemic"; and discharged on May 12, 2012), 860-80 (admitted on October 30, 2012 for recurrent supraventricular tachycardia, "triggered by profound anemia," and discharged on November 2, 2012), 1320-31 (admitted August 20, 2013 for acute exacerbation of chronic back pain, bilateral foot pain, sudden onset of chest pain, and blood sugar of over 500; Plaintiff appeared "to be in pain" and "in severe distress," and her range of motion in the back was limited; she was discharged on August 23, 2013), 1460-1534 (arrived by ambulance on July 9, 2014 with complaints of abdominal pain, nausea, vomiting, and chest pain; she "appear[ed] ill and [was] writhing in pain (abdominal pain)"; discharged on July 14, 2014), 1536-56 (admitted on July 17, 2014 for "significant abdominal pain secondary to gastritis, esophagitis, and constipation," as well as anemia; discharged on July 22, 2014).

had treated Plaintiff for severe low back pain, right leg pain, and bilateral foot pain since April of 2010.  (Tr. 729.)  He noted no improvement in Plaintiff's foot pain and only three to four hours of sleep at night.  (Tr. 729-30.)  Based on Plaintiff's "current pain level and presentation," Dr. Reno recommended that Plaintiff not return to work, and he did not feel that "she could even drive safely to get there." (Tr. 730.)  This opinion seems consistent with the opinions of Dr. Goldman and Dr. McCloskey, all of which suggest more severe restrictions than found by the ALJ.

The ALJ found Dr. McCloskey's opinions overly vague in that the doctor stated Plaintiff had "limitations on bending, stooping, crouching, and so on," but did not define what was included in "and so on." (Tr. 23.)  Regardless of any ambiguity as to "and so on," Dr. McCloskey issued a detailed report after an examination, during which Plaintiff provided "her best effort."  (Tr. 727.)  Based on this examination, Dr. McCloskey opined that Plaintiff could be expected to sit for two hours, stand for 30 minutes, and walk for 15 minutes at a time before requiring a break.  (*Id.*)  He stated that these limitations were due to lower back pain and radiculopathy.[8]  (*Id.*)  Dr. McCloskey also opined that Plaintiff could be

---

[8] The ALJ rejected Dr. McCloskey's opinion partly because he "failed to make even a single diagnosis."  (Tr. 23.)  Although there is no separate section in Dr. McCloskey's report for Plaintiff's diagnoses, Dr. McCloskey included diagnoses throughout his report.  (*See* Tr. 727 ("These limitations are due to lower back pain and radiculopathy. . . . These limitations are due to lower back pain, radiculopathy and limited range of motion.").)

expected to carry five pounds frequently and ten pounds occasionally, could occasionally bend, stoop, and crouch due to lower back pain, radiculopathy, and limited range of motion, and could frequently perform manipulative limitations. (*Id.*)  Dr. McCloskey made these findings after noting, *inter alia*, that, on examination, Plaintiff was able to lift and carry light objects, she was unable to squat, she had difficulty getting up and down from the exam table, she was unable to walk on toes, stand, or hop on either foot, she had an unsteady, asymmetric gait, and the straight leg raise test was positive.  (Tr. 726-27.)  The ALJ did not address these opinions, which not only suggest greater functional limitations than found by the ALJ, but also seem consistent with the opinions of Dr. Goldman and Dr. Reno.  While the ALJ was not required to address every medical opinion in the record, he could not ignore probative evidence supporting Plaintiff's claim, particularly when the evidence was consistent with other opinions in the record.

      Based on the foregoing, this case will be remanded with instructions to the ALJ to properly consider the opinions of Drs. Goldman, Reno, and McCloskey, explain what weight they are being accorded, and the reasons therefor.  In the event the ALJ decides to reject any portion of these opinions, the ALJ must provide explicit reasons supported by substantial evidence.  If, while evaluating the evidence, the ALJ finds that further development of the record is necessary, the ALJ shall take the appropriate steps to do so.  In light of this conclusion and

the possible change in the RFC assessment, the Court finds it unnecessary to address Plaintiff's argument regarding credibility. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam).

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ: (a) to reconsider the opinions of Drs. Goldman, Reno, and McCloskey, and, if necessary, to further develop the record; (b) to reevaluate Plaintiff's RFC assessment, if necessary; and (c) to conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on March 13, 2017.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record